UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER PAGE,

    Plaintiff,                              Civil Action No. 17-13716

      v.                                   District Judge LINDA V. PARKER
                                          Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jennifer Page ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #8] be DENIED.

**PROCEDURAL HISTORY**

On November 12, 2014, Plaintiff applied for DIB, alleging disability as of July 31, 2012 (Tr. 185). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on June 20, 2016 in Oak Park, Michigan (Tr. 70). Patricia S. McKay, Administrative Law Judge ("ALJ") presided. Plaintiff, represented by attorney Jennifer Alfonsi, testified (Tr. 75-96), as did Vocational Expert ("VE") Helen Topcik (Tr. 96-103). On September 26, 2016, ALJ McKay found Plaintiff not disabled (Tr. 109-118). On September 29, 2017, the Appeals Council denied review (Tr. 1-4). Plaintiff filed suit in this Court on November 15, 2017.

**BACKGROUND FACTS**

Plaintiff, born January 14, 1983, was 33 when ALJ McKay issued her decision (Tr. 118, 185). She completed one year of college and worked previously as a customer service and sales representative (Tr. 208). She alleges disability as a result of Post Traumatic Stress Disorder ("PTSD"), depression, and right hip and leg problems (Tr. 207).

**A.     Plaintiff's Testimony**

Plaintiff offered the following testimony:

She lived in Macomb, Michigan with her husband and seven-year-old son (Tr. 75). She was right-handed, stood 5' 9" and weighed 230 pounds (Tr. 76). She completed high school and attended college for one year taking classes in massage therapy (Tr. 76).

Plaintiff's former customer service work involved reading contracts, placing orders, printing invoices, and interacting with customers (Tr. 77-78). Her work in customer service required minimal lifting (Tr. 80). She stopped working in July, 2012 due to right hip pain, noting that the distractions from the condition caused her to make mistakes at work (Tr. 81). Prior to the alleged onset of disability, she underwent four hip surgeries including the original arthroscopic surgery; a more invasive second procedure; a separate procedure for the implantation of hardware; and fourth, the removal of hardware (Tr. 82). Her doctors hesitated to perform hip replacement surgery due to Plaintiff's relatively young age (Tr. 83). Her treatment was limited to pain medication, injections, and physical therapy (Tr. 84).

In addition to the physical problems, Plaintiff experienced depression and PTSD (Tr. 84). She had seen a counselor for the past four years and had a medication review by a psychiatrist every three months (Tr. 84). She also took thyroid medication (Tr. 84). The prescribed medications caused fatigue and nausea (Tr. 85).

On a typical day, Plaintiff would arise at 6:30 a.m., take pain medication, awaken her son, pack his lunch, drive him to school, perform light household chores, and do laundry (Tr. 85-86). She would take a nap between 11:30 a.m. and 3:00 p.m. (Tr. 85). Due to body pain, she experienced night-time sleep disturbances (Tr. 86). In addition to light household and laundry chores, Plaintiff was able to cook (Tr. 87). She avoided freeway driving (Tr. 88). She grocery shopped with her husband and son and used either a motorized cart or leaned on a regular cart for support (Tr. 88). She was able to help her son with his homework (Tr. 89).

She had a Facebook account (Tr. 89).  She quit smoking two weeks before the hearing (Tr. 90).

Plaintiff was unable to walk for more than half a block, stand for more than 20 minutes or sit for more than 40 (Tr. 90).  On a scale of one to ten, she experienced level six to eight pain without medication and four to five after taking medication (Tr. 91).  Her walking problems were exacerbated by the right leg being shorter than the left (Tr. 92).  She was unable to perform any work due to her need to recline at unpredictable times (Tr. 92).  She did not accompany her son on school field trips (Tr. 93).

She sustained injuries in a collision with a semi-truck prior to the alleged disability and in February, 2015 was again injured in a car accident at which time she was issued a wheelchair due to a broken tail bone (Tr. 94).  After the 2015 accident, she underwent shoulder surgery and had since experienced improvement (Tr. 94-95).  Symptoms of PTSD included sweating and visualizing the accident with the semi-truck (Tr. 95).  She required assistance getting in and out of the bathtub (Tr. 95).  She would be willing to undergo hip surgery again to relieve her pain (Tr. 96).

**B.     Medical Evidence[1]**

### 1. Treating Sources

In September, 2011, Robert A. Krasnick, M.D. noted Plaintiff's report of continued right hip and thigh pain (Tr. 343). Plaintiff reported that she was working and had been "doing a lot of walking" (Tr. 343). Dr. Krasnick administered a nerve block and prescribed physical therapy (Tr. 343). In November, 2011, Dr. Krasnick noted that Plaintiff denied numbness, tingling, or weakness and was alert and cooperative (Tr. 342).

April, 2012 records by Dr. Krasnick note that Plaintiff was alert with a normal range of hip motion and strength despite reported hip pain (Tr. 339). Dr. Krasnick's July, 2012 records note Plaintiff's report that she obtained relief of symptoms by either "sitting or lying down" (Tr. 337). In August, 2012, orthopedic surgeon Ira Zaltz, M.D. examined Plaintiff for the first time in two years, noting that her report that her hip pain was getting worse but that she could "live with it" (Tr. 267). Plaintiff demonstrated full muscle strength in the lower extremities (Tr. 267). The same month, a CT of the right hip was negative for fracture or dislocation (Tr. 270). An MRI from the same day showed identical results (Tr. 271). In October, 2012, Dr. Krasnick noted a normal gait and strength with "mild weakness" of the hip (Tr. 336). Plaintiff reported that she was engaged in a home exercise program (Tr. 336).

---

[1] Plaintiff's arguments for remand pertain exclusively to her physical condition. The psychological treating records, while reviewed in full, are included only briefly for background purposes.

A March, 2013 nerve block injection was performed without complications (Tr. 335). The following month, Dr. Krasnick noted that surgery had been recommended but Plaintiff wanted "to avoid any of the surgery" (Tr. 332). In August, 2013, Dr. Krasnick noted a "slightly antalgic gait" (Tr. 329).

In January, 2014, Plaintiff reported "modest" pain relief with Neurontin and that she was "a bit more functional" (Tr. 326). In April, 2014, Dr. Krasnick noted reports of continued pain but noted full muscle strength (Tr. 322). In June, 2014, Plaintiff reported increased pain after a large dog jumped on her (Tr. 318). An x-ray of the hip was unremarkable (Tr. 318). In July, 2014, Dr. Zaltz composed a letter on Plaintiff's behalf, stating that she had "difficulty sitting for prolonged periods of time and . . . soreness when she stands for prolonged periods of time" (Tr. 268). The same month, Dr. Krasnick noted Plaintiff's report of only modest improvement from a recent nerve block (Tr. 388). He observed an antalgic gait (Tr. 388). Dr. Krasnick found that Plaintiff experienced "chronic pain of the hip and thigh" and limited "functional ability and daily activities . . . due to intractable pain" (Tr. 316). He found that she was "restricted in her ability to stand, sit, and walk" and obtained "relief lying down or reclining" (Tr. 316, 345). An x-ray of the right hip from the following month was essentially normal (Tr. 405).

In September, 2014, Dr. Krasnick noted that Plaintiff was taking "more [pain] medication than necessary" (Tr. 386). An MRI of the right hip was negative for fracture or necrosis (Tr. 403). In December, 2014, Plaintiff exhibited a normal range of motion in all

extremities (Tr. 378). An MRI of the right shoulder showed osteoarthrosis of the acromioclavicular joint but no other abnormalities (Tr. 398).

In February, 2015, Plaintiff exhibited a severely antalgic gait following a motor vehicle accident (Tr. 371). Initial imaging studies of the left hand, pelvis, and left knee were unremarkable (Tr. 611-618). In April, 2015, Plaintiff sought emergency treatment for back pain (Tr. 738). An MRI of the lumbar spine showed a disc bulge at L5-S1 but was negative for other abnormalities (Tr. 391-392, 397). The same month, EMG/nerve conduction studies of the left upper extremity showed sensory neuropathy but no other abnormalities (Tr. 395). Plaintiff reported good results from physical therapy for neck pain (Tr. 541). She was encouraged to continue with a home exercise program (Tr. 541). May, 2015 mental health records note a normal mood, affect, and judgment (Tr. 707).

In June, 2015, Plaintiff opted to undergo surgery for continued shoulder pain (Tr. 638). A June, 2015 elective arthroscopic right shoulder procedure was performed without complications (Tr. 419, 512-513). In August, 2015, Plaintiff received nerve blocks without complications or reports of side effects (Tr. 357-358, 605). The following month, Bruce J. Benderoff, D.O. noted improvement in the conditions of right shoulder joint arthritis and bursitis (Tr. 407). An October, 2015 CT of the abdomen was consistent with mild gastroenteritis (Tr. 435). Plaintiff was advised to use a proton pump inhibitor (Tr. 461). Mental health records note that Plaintiff's husband "travel[ed] for work so she has to be [a] single parent with son and his activity" (Tr. 697). She exhibited a normal mood and affect

(Tr. 698). Treating records from the next month note full motor strength in the lower extremities except for mild reduction in right hip flexion (Tr. 594). Imaging studies of the sacrum and coccyx (tail bone) were negative for fracture or other abnormalities (Tr. 606). Imaging studies of the lumbar spine were also unremarkable (Tr. 607).

Plaintiff underwent nerve block injections in February, 2016 without complications (Tr. 577, 589). March, 2016 records by Dr. Krasnick note Plaintiff's report that she exercised occasionally (Tr. 564, 569). Treating records from the same month note full motor strength in the lower extremities except for mild reduction of strength in right hip flexion (Tr. 565). Plaintiff exhibited an antalgic gait (Tr. 570). May, 2016 mental health records note a normal mood, affect, and judgment (Tr. 722).

### 2. Non-Treating Sources

In October, 2014, Shelley Glasso Bonanno, M.A. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of a motor vehicle accident causing right hip, back, and shoulder injuries (Tr. 346). Plaintiff exhibited adequate contact with reality and a normal thought process but poor self-esteem (Tr. 349). Bonanno diagnosed Plaintiff with depression, PTSD, and a somatic symptom disorder (Tr. 351).

In November, 2014, Robert Nelson, M.D. performed a non-examining review of the treating records on behalf of the SSA, finding that Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday and stand or walk for two; and no limitation in pushing/pulling in the upper extremities (Tr. 132). He

found that Plaintiff required a sit/stand option allowing her to change positions five minutes each hour (Tr. 132).  He precluded all climbing of ladders, ropes, or scaffolds but found that Plaintiff could perform all other postural activity on an occasional basis (Tr. 132).  He found that Plaintiff should avoid concentrated exposure to wetness and hazards such as machinery and heights (Tr. 133).

### C.  Vocational Expert Testimony

VE Helen Topcik classified Plaintiff's past relevant work as customer service representative and sales associate as semiskilled and exertionally sedentary[2] (Tr. 97-98). ALJ McKay then posed the following limitations to the VE, describing an individual of Plaintiff's age, education, and work experience:

> [T]he ability to perform a sedentary job, but she does need to be limited to occasionally climbing stairs or crouching or crawling or kneeling or stooping or bending. She's not able to work near hazards . . . such as dangerous moving machinery or working at unprotected heights.  We don't want her climbing any ladders or ropes or scaffolding.  This work should be low stress . . . a self-paced job; she's not working at a production rate or in team or tandem with her coworkers (Tr. 98-99)

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

The VE testified that the above limitations would preclude Plaintiff's past work but would allow for the sedentary, unskilled work of a woodworking or dowel inspector (250,000 jobs in the national economy); general office worker (300,000); and assembler (200,000) (Tr. 100) The VE testified further that a sit/stand option allowing the individual to stand every 40 minutes for five minutes would not change the job numbers (Tr. 100). She testified that the need for a wheelchair while sitting would not affect the job numbers (Tr. 101). She testified that either the need to nap for a three-and-a-half hour block each work shift, or, the need to nap for 15 minutes for every hour of the workday would preclude all work (Tr. 102). She stated that the need to be off task for 10 percent or more of the workday would eliminate all unskilled work (Tr. 102). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("DOT") and *Selected Characteristics of Occupations* ("SCO") except for the testimony regarding a sit/stand option and the effect of being off task which was based on her own professional experience (Tr. 103).

### D. The ALJ's Decision

Citing the medical records, ALJ McKay found the severe impairments of "degenerative disc disease of the right hip with chronic pain," depression, and PTSD but that none of the conditions met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 111-112). She found that the conditions of obesity, right shoulder bursitis, degenerative disc disease of the lumbosacral spine, neck pain, and gastritis

were non-severe (Tr. 111). The ALJ found that Plaintiff experienced moderate restriction in activities of daily living, mild limitation in social functioning and moderate limitation concentration, persistence, or pace (Tr. 112).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for sedentary work with the following limitations:

> [She] can occasionally climb stairs, crouch, crawl, kneel, and stoop. The claimant must avoid workplace hazards such as dangerous, moving machinery, and unprotected heights, including no climbing ladders, ropes or scaffolds. [She] can tolerate low-stress work, which is work that is self-paced and not at a production rate, and which is not in a team or tandem with coworkers (Tr. 113).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to return to her past work, she could perform the jobs of inspector, office clerk, and assembler (Tr. 100, 117).

The ALJ discounted Plaintiff's professed degree of limitation, citing March, 2016 records noting that Plaintiff was able to exercise and had intact motor strength (Tr. 114). She noted that Plaintiff reported being only "a little drowsy" from her currently prescribed pain medication (Tr. 114). The ALJ accorded "little weight" to the opinions by treating physicians Drs. Krasnick and Zaltz, noting that the opinions of disabling physical limitation were contradicted by the treating records (Tr. 115). The ALJ assigned "great weight" to Dr. Nelson's non-examining finding that Plaintiff was capable of a limited range of sedentary work (Tr. 115).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

In her sole argument for remand, Plaintiff argues that the ALJ's determination is internally inconsistent. *Plaintiff's Brief,* 13-17, *Docket #8,* Pg. ID 787.[3] She points out that while the ALJ accorded "great weight" to Dr. Nelson's non-examining assessment, the RFC for sedentary work crafted by the ALJ does not include his finding of a need to change positions (sit/stand option) five minutes every hour. *Id.* (*citing* Tr. 113, 115-116, 132).

---

[3] At one point, Plaintiff also notes that the RFC must include consideration of the mental limitation related to "instructions, judgments, decision, changes, or the need for routine" require vocational testimony. *Plaintiff's Brief* at 16 (*citing* SSR 96-9p, 1996 WL 374185, at *9). However, she does not state how the ALJ erred in assessing the mental limitations. Moreover, the restriction to unskilled, low-stress, self-paced, independent tasks found in the RFC (Tr. 113), accounts for all of the psychological limitations found by the non-examining source (Tr. 129, 133-135).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" including objective findings, non-medical evidence, and activities of daily living. SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996). The analysis of the physical functions must include the exertional activities of "sitting, standing, walking, lifting, carrying, pushing, [and] pulling" as well as the non-exertional limitations. *Id.* at *5; 20 C.F.R. § 404.1545. SSR 96-9p states that where the claimant requires a sit/stand option that "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). "The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." *Id.* "The imposition of a sit/stand at will [option] requirement allowing the individual to change positions at any time rather than prescribed intervals, is the most restrictive of all the sit/stand limitations." *Ferguson v. Commissioner of Social Sec.*, 2013 WL 530868, at *5 (E.D.Mich. January 23, 2013)(*citing* SSR 96-9p). "It may be especially useful [in determining the need for a sit/stand option] to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p at *7.

As discussed above, Dr. Robert Nelson performed a non-examining assessment of Plaintiff's physical abilities, finding in relevant part that she could lift 10 pounds occasionally and less than 10 pounds frequently; sit for six hours and stand or walk for two

in an eight-hour workday (Tr. 132). He found that Plaintiff required a sit/stand option allowing her to change positions five minutes each hour (Tr. 132). The ALJ acknowledged Dr. Nelson's sit/stand findings (Tr. 115-116). She went on to accord Dr. Nelson's finding that Plaintiff was not disabled "great weight" because it was consistent with the treating records showing that Plaintiff's physical condition continued to improve (Tr. 116). However, while the ALJ incorporated Dr. Nelson's sedentary work finding in the RFC she did not include Dr. Nelson's finding that Plaintiff was required to change positions for five minutes each hour (Tr. 113).

For multiple reasons, the omission from the RFC of a small portion of Dr. Nelson's findings does not present grounds for remand. First, Dr. Nelson's finding that Plaintiff could lift/carry 10 pounds occasionally and *less* than 10 pounds frequently does not contradict the finding that Plaintiff could perform sedentary work. *See* 20 C.F.R. § 404.1567(a)(sedentary work is limited to 10 pounds lifting or carrying on an occasional basis). The fact that Dr. Nelson found that she could lift less than 10 pounds on a frequent basis does not invalidate the RFC for sedentary work.

Second, while the ALJ accorded "great weight" to Dr. Nelson's findings, Plaintiff cites no authority equating the accord of "great weight" to adopting every one of a source's discrete findings. Dr. Nelson's sedentary work finding and his finding of postural limitation are both included in the RFC (Tr. 113, 132). Although the ALJ omitted the sit/stand option and the finding that Plaintiff should avoid concentrated exposure to wetness (Tr. 133), a

comparison of the RFC and non-examining assessment shows that the ALJ adopted the bulk of Dr. Nelson's findings.

Third, substantial evidence, well discussed in the administrative opinion, supports the omission of a sit/stand restriction from the RFC. Consistent with the my own review of the treating records, the ALJ found that Plaintiff exhibited almost full motor strength in the lower extremities (Tr. 114, 565, 594). The ALJ noted that the nerve block injections allowed her to sit for longer periods (Tr. 114). Plaintiff's claim of limitation in sitting is undermined by her July, 2012 report to Dr. Krasnick that she obtained relief of symptoms by *either* "sitting or lying down" (Tr. 337). The ALJ noted that the more recent records showed that Plaintiff experienced good results from the conservative treatment of injections and pain medication (Tr. 114). Mental health treating records noting that Plaintiff acted as a "single parent" requiring her to participate in her son's "activit[ies]" while her husband traveled for work (Tr. 696) also undermine her allegations that she was unable to perform household or childcare chores by herself (Tr. 87-93).

Finally, even assuming the ALJ erred by declining to include a sit/stand option in the RFC, the omission does not provide grounds for remand given that the inclusion of the sit/stand option proposed by Dr. Nelson would not alter the Step Five conclusion. At the administrative hearing, the VE testified that a hypothetical individual limited to the exertional, postural, and environmental limitations found in RFC could perform the sedentary work of an inspector, office worker, and assembler (Tr. 98-100). In response to further

questioning by the ALJ, the VE testified that if the same individual were additionally limited by the need to perform her work in a standing position for five minutes at 40 minute intervals (the degree of limitation alleged by Plaintiff) before returning to a sitting position, the job findings and numbers would remain unchanged (Tr. 90, 100). It follows that Dr. Nelson's finding that Plaintiff could sit for 55 minutes before requiring a five-minute position change (a less restrictive sit/stand option than the one posed by the ALJ) would not change the job numbers or ultimate finding Step Five finding that Plaintiff was capable of a significant range of sedentary work. Thus, even assuming that the omission of a sit/stand option from the RFC constituted error, "'[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'" *Kornecky v. Commissioner of Social Security,* 167 Fed.Appx. 496, 507, 2006 WL 305648, at *10 (6th Cir. February 9, 2006)(*citing Fisher v. Bowen*, 869 F.2d 1055, 1057 (6th Cir. 1989)).

My recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate health concerns. However, the finding that she was capable of a limited range of unskilled, exertionally sedentary work is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #8] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/ R. Steven Whalen  
                                        R. STEVEN WHALEN  
                                        UNITED STATES MAGISTRATE JUDGE

Dated: January 15, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 15, 2019, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla  
                                        Case Manager to the  
                                        Honorable R. Steven Whalen